## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Craig J. Bergh,

                   Plaintiff,

v.

Sanford Health and Sara Zoelle,

                  Defendants.

Case No. 24-cv-3054 (JRT/DLM)

**ORDER DENYING PLAINTIFF'S MOTION TO AMEND THE PLEADINGS**

---

       This matter is before the Court on Plaintiff Craig J. Bergh's Motion to Amend the Pleadings (Docs. 32 (motion), 33 (memorandum)), which Defendants Sanford Health Network and Sara Zoelle oppose (Doc. 44 (Defendant's memorandum)). The Court held a motion hearing on November 6, 2024, and ordered supplemental briefing (Doc. 45 (hearing minutes)), which the parties have now filed (Docs. 46 (Plaintiff's supplemental brief), 47 (Defendants' supplemental brief)). For the reasons below, the Court denies Plaintiff's motion.

## BACKGROUND

Mr. Bergh brings this lawsuit against his former employer, Sanford Health,[1] as well as one of Sanford's employees, Sara Zoelle, a family practice doctor who also serves as Sanford's Chief Medical Officer. Mr. Bergh is an anesthetist and claims that, during a surgery on August 15, 2022, he provided services for a female patient who had previously received a double mastectomy followed by breast implants. During the surgery, Mr. Bergh claims that he performed a medically necessary assessment of the patient's breast placement to ensure proper positioning for surgery in a prone (face-down) position, as failure to do so can cause a patient to sustain injuries. A nurse observed this breast exam and—having no medical expertise in positioning a patient with breast implants for a prone surgery—believed that Mr. Bergh performed the actions for a salacious purpose. That nurse reported the incident to Sanford Health's hospital administration, including Dr. Zoelle, a medical generalist who also had no medical expertise on prone positioning of such a patient. According to Mr. Bergh, instead of properly investigating the allegation, Dr. Zoelle and other hospital administration members convened a snap Zoom meeting on the same day as the incident. During that meeting, they shared their determination that Mr. Bergh had failed to obtain the required consents from the patient, notified him that his sexual

---

[1] The Court notes that Plaintiff identifies this Defendant as "Sanford Health," not "Sanford Health Network," in his operative pleading, although the docket for this lawsuit names "Sanford Health Network." (*See* Doc. 13 ¶ 2.) He asks the Court to rectify this error via his proposed order on his pending motion to amend. (Doc. 35.) The Court therefore directs the Clerk of Court to update the case caption to reflect this correction.

assault had been reported to Nobles County law enforcement and the Minnesota Board of Nursing, and terminated him.

Although the state Board of Nursing found disciplinary action unwarranted and Nobles County dropped the charges against him, Mr. Bergh claims his reputation has been harmed and that he is struggling to find work as a result. He alleges that if there had been a proper investigation and he had been allowed to present evidence on best practices from other anesthesiologists on prone placement evaluations—which he claims Defendants actively tried to exclude from their investigation—he would never have had to suffer such severe reputational, financial, and emotional harms. He brings claims for defamation (Count I), tortious interference with prospective advantage (Count II), and malicious prosecution (Count III) in his operative Second Amended Complaint ("SAC") (Doc. 13).

Defendants moved to dismiss Mr. Bergh's claims in full in September 2024 (Doc. 21), and in response, Mr. Bergh moved to strike Defendants' memorandum supporting their motion to dismiss because he claims it contains scandalous and baseless claims about him (Doc. 28). These motions are currently pending before the District Judge in this matter and a hearing is set for March 5, 2025. (Docs. 48–49.)

After the parties filed these motions, Mr. Bergh brought the instant motion seeking to file a proposed third amended complaint ("TAC") (Doc. 32). In Mr. Bergh's supporting memorandum (Doc. 33), he argued that the proposed amendments are necessary to respond to defects in his SAC. These defects include the subsequent voluntary dismissal of Defendant Sanford Health of Northern Minnesota, as well as corrections he claims are necessary in light of Defendants' pending Rule 12 motion.

3

Plaintiff's proposed amendments are substantial and can be summarized as follows:

- Removing references to Defendant Sanford Health of Northern Minnesota who is no longer part of this lawsuit;[2]
- Adding allegations related to Plaintiff's preoperative evaluation of the patient undergoing the August 15, 2022 surgery;
- Adding allegations related to Mr. Bergh's experience as an anesthesiologist;
- Adding allegations related to the August 15, 2022 Zoom meeting between the hospital administration and Mr. Bergh;
- Adding allegations about the false accusations of criminal conduct against Mr. Bergh, including, among other things, details of a report filed by Defendants with the Minnesota Adult Abuse Reporting Center ("MAARC");
- Adding allegations that, had Defendants properly investigated and necessarily found no misconduct had occurred, they could have promptly acted to clear suspicions reported to the Minnesota Board of Nursing and MAARC and Mr. Bergh would not have faced such far-reaching reputational harms;
- Adding allegations about how Defendants' conduct, including their repeated and ongoing misreporting of Mr. Bergh's conduct to other hospitals, has harmed Mr. Bergh's ability to seek subsequent employment;
- Adding allegations about how Defendants' conduct has caused Mr. Bergh mental and emotional distress accompanied by physical symptoms;
- Adding allegations to support his claim for defamation under Count I;
- Adding allegations and a new count for compelled self-defamation as Count II;
- Adding allegations and a new count for false light portrayal of Mr. Bergh as Count III;
- Adding allegations to support his claim for tortious interference with prospective advantage under Count IV; and
- Adding allegations to support his claim for malicious prosecution under Count V.

(*See* Doc. 34-2, Pl.'s Ex. B.)

Defendants Sanford Health and Sara Zoelle oppose Mr. Bergh's motion. (Doc. 44.)

They argue that Mr. Bergh has already had four chances to amend his complaint; failed to

meet-and-confer with them before moving to amend; proposes additions that amount to

---

[2] The Clerk's Office terminated Sanford Health of Northern Minnesota on September 5, 2024, in response to Mr. Bergh's notice voluntarily dismissing this Defendant. (*See* Doc. 20 at 1.)

over 3,000 new words; unfairly prejudices them because they have a ripe motion to dismiss; and proposed futile amendments because the TAC's pleadings fail to state claims that could survive a Rule 12 motion.

At the hearing on November 6, 2024, the Court entertained argument on the parties' dispute over whether the proposed false light claim in the TAC should be governed by Minnesota or South Dakota law. In light of that question, and considering the issues of futility raised by Defendants, the Court ordered supplemental briefing on the futility and choice-of-law arguments at issue.

In his supplemental brief (Doc. 46), Mr. Bergh generally argues that his proposed amendments are not futile, repeatedly emphasizing that Defendants should have known that they were repeating false statements about his unprofessionalism had they properly investigated the nurse's layperson report of his conduct. He also contends that Defendants enjoy no statutory or qualified immunity for their statements because they did not act in good faith. Mr. Bergh also asserts that Defendants support their arguments with procedurally inapposite caselaw that fails to clarify the legal requirements at the pleadings stage. Additionally, Mr. Bergh argues that the tort of false light is not futile as alleged in the TAC because it should be interpreted under South Dakota law, not Minnesota law.

In their supplemental brief (Doc. 47), Defendants generally argue that Mr. Bergh's proposed TAC remains futile and cannot be resuscitated by claiming the allegations somehow demonstrate bad faith or malice when they do not, or that a different state's law should govern some of the pleadings when it should not. They also contend that Mr. Bergh's shifting allegations show bad faith concerning his malicious prosecution claim

5

which, regardless, remains futile because he has not sufficiently alleged that Defendants

had control over the prosecutor who brought criminal charges against Mr. Bergh.

## ANALYSIS

"When a plaintiff moves to amend a complaint after a motion to dismiss has been

filed, as [Mr. Bergh] has done here, the court must first address the motion to amend."

*Jones v. Capella Univ.*, 706 F. Supp. 3d 822, 826 (D. Minn. 2020), *aff'd*, 849 F. App'x 616

(8th Cir. 2021). Leave to amend a pleading is governed by Federal Rule of Civil Procedure

15, which provides that "a party may amend its pleading only with the opposing party's

written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although courts "should

freely give leave [to amend the pleadings] when justice so requires," Fed. R. Civ. P.

15(a)(2), there is no absolute right to amend a pleading "even under this liberal standard,"

*Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). "A district court

may appropriately deny leave to amend where there are compelling reasons such as undue

delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the non-moving party, or futility of the

amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052,

1065 (8th Cir. 2005) (quoting *Hammer v. City of Osage Beach, MO*, 318 F.3d 832, 844

(8th Cir. 2003) (cleaned up)).

Futility is at issue here. "An amendment is futile when it could not survive a motion

to dismiss under Rule 12(b)(6)." *Id.* (citing *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir.

2010)). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Braden v.*

6

*Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In applying this standard, the Court accepts the factual allegations as true and views them most favorably to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

## I.     MR. BERGH'S MOTION TO AMEND SHOULD NOT BE SUMMARILY DISMISSED ON PROCEDURAL GROUNDS.

There are four threshold matters that the Court briefly addresses before turning to the futility analysis on which Mr. Bergh's motion rises or falls. First, Defendants argue that Mr. Bergh has enjoyed repeated opportunities to file a version of the pleadings that will stand the course of this lawsuit, and that the Court should deny his motion on that basis. It is true that Mr. Bergh filed duplicative cases in this District[3] and that the Court required him to amend his pleadings to clarify the presence of subject-matter jurisdiction.[4] While this case's start has been procedurally complicated, the case moment remains early and the standard under Rule 15 remains liberal. The Court will not deny Mr. Bergh's motion on this basis.

---

[3] *See Bergh v. Sanford Health Network et al.*, Case No. 24-cv-3054 (JRT/DLM) (D. Minn. July 31, 2024) (the instant case) *and Bergh v. Sanford Health et al.*, Case No. 24-cv-3238 (PJS/DLM) (D. Minn. Aug. 12, 2024) (terminated Aug. 27, 2024, at Plaintiff's request).
[4] *See* August 5, 2024 Order to Amend Pleadings to Adequately Plead Diversity of Citizenship Subject-Matter Jurisdiction. (Doc. 5.)

Second, Defendants point out that Mr. Bergh failed to file a meet-and-confer statement with his motion as required by this District's Local Rules.[5] This is accurate, but the Court directed Mr. Bergh to rectify his error (Doc. 38), and he did so (Doc. 40). The Court declines to deny Mr. Bergh's motion on this basis either.

Third, Defendants contend that the Court should not allow Mr. Bergh to allege entirely new counts that he could have raised in his earlier versions of the pleadings. The Court asked Mr. Bergh to explain his delay during the motion hearing and understood Mr. Bergh's position to be that the statute of limitations created pressure to file quickly and Defendants' motion to dismiss highlighted pleading weaknesses easily remedied by permission to amend. Given the early procedural posture,[6] Defendants would not be unduly prejudiced if the Court granted Plaintiff's motion despite its wholly new claims. *See e.g.*, *Advance Tr. & Life Escrow Servs., LTA v. ReliaStar Life Ins.*, No. 18-cv-2863 (DWF/ECW), 2020 WL 5229677, at *11 (D. Minn. Sept. 2, 2020) (discussing caselaw where undue prejudice has been found by motions to amend involving new claims because they required late-breaking discovery, for example). This also provides no persuasive basis to deny Mr. Bergh's motion.

Finally, Defendants argue that their Rule 12 motion before the District Judge in this matter is fully briefed and they will suffer prejudice if the Court moots their motion by

---

[5] *See* D. Minn. LR 7.1(a)(1) (requiring a party to meet and confer with opposing counsel before filing a motion and to "file a meet-and-confer statement together with the motion that it relates to").

[6] Because of Defendants' pending Motion to Dismiss (Doc. 21), the Court has not yet even entered a pretrial scheduling order or had a pretrial conference.

permitting Mr. Bergh to file a new pleading. Such inconveniences caused by pleading amendments are often part of the procedural flow of litigating a new case. The Court thus finds no persuasive reason that those inconveniences amount to unfair prejudice here.

## II.    MR. BERGH'S PROPOSED AMENDMENTS ARE NEVERTHELESS FUTILE AND HIS MOTION TO AMEND IS DENIED ON THAT BASIS.

In his proposed TAC, Mr. Bergh proposes amendments to the SAC's existing counts for defamation, tortious interference with prospective advantage, and malicious prosecution. He also proposes to add two new counts for self-defamation and false light portrayal. The Court will take each cause of action in turn.

### A.    Mr. Bergh's proposed amendments as to his defamation claim are futile because Defendants' statements are entitled to statutory and qualified immunity.

To plausibly allege a claim for defamation, Mr. Bergh must plead that Defendants "made statements that were false, that were communicated to another person, and that harmed [Mr. Bergh's] reputation." *Lopez Prater v. Trustees of Hamline Univ. of Minnesota*, 693 F. Supp. 3d 1009, 1028 (D. Minn. 2023) (citing *Chang v. Cargill, Inc.*, 168 F. Supp. 2d 1003, 1011 (D. Minn. 2001); *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919–20 (Minn. 2009)); *see also* Minn. Stat. § 181.967, subd. 2 (an action for defamatory employment references requires pleading an employer knew or should have known they provided false and defamatory information and acted with malice). In Minnesota, "courts have held that statements that impute serious sexual misconduct are defamatory per se." *Longbehn v. Schoenrock*, 727 N.W.2d 153, 159 (Minn. Ct. App. 2007) (citing *Richie v.*

9

*Paramount Pictures Corp.*, 544 N.W.2d 21, 25 n. 3 (Minn. 1996); Restatement (Second) of Torts § 574 cmt. d (1977)).

Mr. Bergh claims Defendants inadequately investigated the nurse's false claims that Mr. Bergh had engaged in inappropriate sexual contact with an unconscious patient. (*See, e.g.*, Pl.'s Ex. B ¶¶ 41–42, 68.) Based on this refusal to conduct a reasonable investigation, Mr. Bergh contends that Defendants then inaccurately reported to Nobles County law enforcement, the Minnesota Board of Nursing, other hospitals, and Plaintiff's prospective future employers that they had terminated Mr. Bergh for unprofessional conduct when they knew or should have known this information was false. (*See, e.g.*, *id.* ¶¶ 47–48, 51, 54–56, 58, 61–70.) He claims that because of Defendants' false statements, he has sustained financial, reputational, and mental/emotional harms. (*Id.* at 59–60.) These harms include that he has lost employment opportunities, been forced to repeat Defendants' false statements about the circumstances of his termination to prospective employers, been barred from working in his hometown hospital of choice, and has suffered mental and emotional distress involving anxiety, heart palpitations, panic attacks, and chest pains which require him to take an anti-anxiety medication. (*See, e.g.*, *id.* ¶¶ 51–53, 56–60.)

Defendants contend that the proposed TAC fails to allege a defamation claim that could survive a Rule 12(b)(6) motion. They claim their statements about Mr. Bergh, however disparaging, accurately recounted the nurse's eyewitness report of Mr. Bergh's conduct. Defendants also argue Mr. Bergh's defamation claim is barred by statutory and qualified immunity because a good faith report of professional misconduct or suspected criminal conduct is mandatory when a facility like Sanford has reason to suspect a

vulnerable adult has been maltreated. Defendants likewise argue that statements made to prospective employers are conditionally privileged where they are made for a proper purpose, with a reasonable basis, and not because of malice.

The Court finds Mr. Bergh's claim of defamation is futile as pled in his TAC because Defendants' conduct is protected by privilege. *See Elstrom v. Indep. Sch. Dist. No. 270*, 533 N.W.2d 51, 55 (Minn. Ct. App. 1995) ("A defamatory statement may be protected by a qualified privilege."); *Issaenko v. Univ. of Minnesota*, 57 F. Supp. 3d 985, 1033 (D. Minn. 2014) (the existence of a qualified privilege is a question of law for courts to decide). By Minnesota statute, Defendants were required to report if they suspected a vulnerable adult had been maltreated. *Elkharwily v. Mayo Holding Co.*, 823 F.3d 462, 468 (8th Cir. 2016) ("Under the [Minnesota Vulnerable Adults Act ("MVAA")], if '[a] mandated reporter . . . has reason to believe that a vulnerable adult is being or has been maltreated . . . [they] shall immediately report the information . . . .") (quoting Minn. Stat. § 626.557, subd. 3(a)).[7] Good faith reports to the Minnesota Board of Nursing are also subject to statutory immunity. *See* Minn. Stat. § 148.264, subd. 1 ("Any person, health care facility, business, or organization is immune from civil liability or criminal prosecution for submitting in good faith a report to the board" based on their reporting duties as, among other things, a health care organization or a licensed professional in Minnesota under

---

[7] Additionally, the Court notes that merely repeating the opinion of a witness based on reasonable cause does not meet the bar for defamation. *See Elkharwily*, 823 F.3d at 468 ("Mayo's alleged defamatory statements were also based on reasonable cause, the confidential opinions of several colleagues."); *see also Lopez*, 693 F. Supp. 3d at 1028 (opinions do not give rise to liability for defamation).

Minnesota Statute § 148.263, or because they know of an alleged violation of the Minnesota Nurse Practice Act under Minnesota Statute §§ 148.171 to 148.285). Finally, providing a subjective professional reference as an employer is shielded from defamation where the reference is given for a proper purpose and motive based on reasonable cause. *See Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256–57 (Minn. 1980) ("The law is that a communication, to be privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause.") (quoting *Hebner v. Great N. Ry.*, 80 N.W. 1128, 1129 (1899)); *see also Hunt v. Univ. of Minn.*, 465 N.W.2d 88, 96 (Minn. Ct. App. 1991) ("[The employer's] subjectively honest assessment of [the plaintiff's] job performance was an employment reference made for a proper purpose. Under these circumstances, the trial court properly refused to amend [the plaintiff's] complaint to allege a claim which she could not maintain."). For all these reasons, the Court finds that, even assuming Plaintiff's allegations are true and assuming without deciding that Defendants' statements constitute defamation, their statements are protected by statutory and qualified immunity and Defendants cannot thus be found liable for defamation on these pleadings.

For Mr. Bergh's allegations to overcome these protections, he must sufficiently allege that Defendants acted in bad faith or with malice in his TAC. *See Bauer v. State*, 511 N.W.2d 447, 450 (Minn. 1994) ("The test for actual malice is whether the defamatory statement was made 'from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff.'") (quoting *Stuempges*, 297 N.W.2d at 257). Apart from direct allegations showing ill will and improper motives, malice may also be

indirectly inferred from "the exaggerated language of the libel, the character of the language used, the mode and extent of publication, and other matters in excess of the privilege.") *Id.* (quoting *Frankson v. Design Space Int'l*, 394 N.W.2d 140, 144 (Minn. 1986)). In the employment context, "the state of mind of the utterer of the alleged defamation is more significant than whether [they] knew that what [they were] saying was false." *Stuempges*, 297 N.W.2d at 258.

Here, Mr. Bergh's allegations focus on Defendants' failure to properly investigate as evidence of their bad faith or malice. He claims that had Defendants' suspicions of maltreatment been properly investigated, he would have been exonerated and reports to Nobles County and the state Nursing Board could have been avoided. Instead, he alleges that Defendants were intent on rushing through a same-day bad-faith termination accompanied by malicious external reports to the Nursing Board and Nobles County.

Even drawing every inference in Plaintiff's favor, the Court disagrees. As pled in the TAC, Defendants appear responsive to the events of the day of the incident and to the nurse's report. Mr. Bergh does not allege that Defendants' investigation was animated by any particular ill will against him, or that such malice should be directly inferred from the statements they made. *See Issaenko*, 57 F. Supp. 3d at 1035; *Stuempges*, 297 N.W.2d at 258. For example, the Court has no contextual inferences from which to conclude that Defendants fabricated a way to harm him professionally on the day of the alleged incident. And looking to Defendants' statements themselves, they do not appear on their face to exaggerate what the nurse reported, or to be published in a manner that suggested Defendants' motivation was to harm Mr. Bergh rather than to report suspicions of

13

maltreatment. *See Bauer*, 511 N.W.2d at 450. Nor does the timing of the statements create an inference of bad faith or malice where the MVAA requires haste when a mandated reporter suspects maltreatment—it says they "shall *immediately* report the information." Minn. Stat. § 626.557, subd. 3(a) (emphasis added). The Court therefore finds Mr. Bergh's proposed allegations fail to sufficiently allege the bad faith and malice that would overcome the privileges applicable to Defendants' statements, rendering his proposed amendments to his defamation claim futile.

**B.    Mr. Bergh's proposed amendments as to his tortious interference with prospective economic advantage claim are futile because he has failed to adequately allege tortious conduct by Defendants.**

To allege a viable claim for tortious interference with prospective advantage, Mr. Bergh must plausibly allege: "(1) the existence of a reasonable expectation of economic advantage belonging to [him]; (2) [Defendants'] knowledge of that expectation; (3) [Defendants'] wrongful interference with that expectation; (4) a reasonable probability that [he] would have realized the expectation absent [Defendants'] conduct; and (5) damages." *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, 351 F. Supp. 3d 1187, 1214–15 (D. Minn. 2018) (citing *Daum v. Planit Sols.*, Inc., 619 F. Supp. 2d 652, 658 (D. Minn. 2009)), *aff'd*, 962 F.3d 1015 (8th Cir. 2020). Liability for this tort turns on whether Defendants acted improperly. *Id.* Improper conduct means acts "that are independently wrongful such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade or any other wrongful act recognized by statute or the common law." *Id.* at 1215 (quoting *Harman v. Heartland Food Co.*, 614 N.W.2d 236, 241 (Minn. Ct. App. 2000)).

14

Here, Mr. Bergh pleads that he has earned income by working as an anesthetist at a hospital eventually purchased by Sanford since 1999 with expectations of his contract being renewed as usual, and has provided locum tenens services to other hospitals since 2013 as well. (Pl.'s Ex. B ¶¶ 10–12.) He alleges that because Defendants refused to investigate the nurse's false accusation about his conduct—and because they instead reported the false accusation to Nobles County, the state Board of Nursing, and other hospitals—Sanford terminated his contract and ensured that his future employment prospects with other hospitals were harmed. (*See, e.g.*, *id.* ¶¶ 47–48, 51–58, 61–70.) He claims that had Sanford conducted a proper investigation and allowed him to present testimony on medical best practices from other anesthesiologists qualified to speak to such matters—rather than terminating and defaming him on an untrue accusation—he would have been able to continue working for Sanford and at other medical facilities. (*Id.* ¶¶ 85–88, 92–98.) The tort he pleads to support his tortious interference claim is defamation. (*Id.* ¶¶ 84 ("The language used by Sanford reports that Mr. Bergh's privileges were relinquished for unprofessional conduct"), 85 ("false statements were made by Defendants"), 86 ("All of these facilities had contacted Sanford and received the defamatory information"), 87 ("Because of these constant false accusations being made against Bergh . . . , Bergh has been limited in the amount of employment he can obtain")).)

Because the Court has found that Mr. Bergh's proposed amendments to his defamation claim are futile, the Court likewise finds that Mr. Bergh's proposed amendments to his tortious interference claim are also futile because they rely on Mr. Bergh's inadequately pled defamation claim. *See Gieseke ex rel. Diversified Water*

*Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 218 (Minn. 2014) (holding plaintiff must allege intentional interference with prospective economic advantage that is "intentional and independently tortious or unlawful, rather than merely unfair"—such as an actionable defamation claim—to survive Rule 12). Furthermore, even if Mr. Bergh proposed to base his tortious interference claim on another tort alleged in his TAC, the Court has found that no other tort has been adequately alleged, as discussed below.

### C.     Mr. Bergh's proposed amendments to his malicious prosecution claim are futile because he has not created a plausible inference that Defendants lacked reasonable suspicion of the crime charged when reporting it to Nobles County.

To plausibly allege a claim for malicious prosecution arising from criminal proceedings, Mr. Bergh must allege that "(1) the defendant[s] initiated criminal proceedings (2) without probable cause and (3) with malice, and (4) the proceedings terminated in the plaintiff's favor." *Hoyland v. McMenomy*, 185 F. Supp. 3d 1111, 1128 (D. Minn. 2016) (quoting *Young v. Klass*, 776 F. Supp. 2d 916, 922 (D. Minn. 2011)), *aff'd*, 869 F.3d 644 (8th Cir. 2017).

The Court finds that the element of probable cause presents futility issues that Mr. Bergh has not overcome. "Probable cause is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Nygard v. City of Orono*, 39 F.4th 514, 521 (8th Cir. 2022) (quoting *Allen v. Osco Drug, Inc.*, 265 N.W.2d 639, 643 (Minn. 1978) (internal quotation marks omitted)). "Only reasonable belief that probable cause existed is necessary to negate a malicious prosecution claim." *Id.* (quoting *Dunham v. Roer*, 708 N.W.2d 552, 569 (Minn. Ct. App. 2006) (internal quotation marks

omitted)). "The 'failure to investigate' can show that probable cause is lacking, *see Allen*, 265 N.W.2d at 644, as can reliance on intentionally false statements, *see Young v. Klass*, 776 F. Supp. 2d 916, 923–24 (D. Minn. 2011) (collecting cases)." *Id.*

Here, Mr. Bergh's own proposed amended pleadings allege that the nurse who gave the eyewitness account and the hospital administrator who received it acted on their insufficient knowledge as non-experts that something untoward had occurred by Mr. Bergh's conduct. (*See, e.g.*, Pl.'s Ex. B ¶¶ 22 ("The statements of the nurse simply indicated her lack of knowledge as to what the anesthetist was doing"), 25 ("The operating room personnel . . . apparently lacked the knowledge of the risks of the prone position"), 26 ("It appears that neither the nurse, nor the hospital administrator, nor Sara Zoelle, who was the Chief Medical Officer for Sanford, had much, if any, experience with the proper examination required . . . by an anesthetist prior to or during this surgery.").) The inference is that the nurse reported what she thought was true, Defendant Zoelle received her report of what the nurse thought was true and lacked the expertise to question the accuracy of the nurse's opinion, and Defendants reported what the nurse thought was true as required by Minnesota statute.

Mr. Bergh alleges that Defendants should have sought input from other anesthetists who *did* have the medical expertise needed to determine what had occurred. (*See, e.g.*, *id.* at 29–30.) Maybe so, but this does not salvage his pleadings on this count. Mr. Bergh himself has pled that Defendants reported based on what they believed to be true. And while Mr. Bergh believes more pre-reporting investigation ought to have been done, the investigation here was not so lacking as to demonstrate the absence of probable cause,

17

particularly in light of the statutory duty to report misconduct "immediately" under the MVAA. Minn. Stat. § 626.557, subd. 3(a). Drawing every inference in Mr. Bergh's favor, reasonable belief that probable cause existed is present on these pleadings. This makes the pleading amendments futile as to his malicious prosecution claim. *Nygard*, 39 F.4th at 521.[8] The Court therefore need not consider the other elements of malicious prosecution because the pleadings fail for futility based on the probable cause element alone.

**D.    Mr. Bergh's proposed amendments as to his self-defamation claim are futile because his underlying defamation claim against Defendants is futile.**

To plausibly allege a claim for self-defamation, Mr. Bergh must plead that he "was in some way compelled to communicate the [defendants'] defamatory statement to a third person, and . . . it was foreseeable to the defendant[s] that [he] would be so compelled . . . ." *Lewis v. Equitable Life Assur. Soc. of the U.S.*, 389 N.W.2d 876, 886 (Minn. 1986) (collecting cases). The Supreme Court of Minnesota noted that, in adopting this self-publication tort, it did not "substantially broaden the scope of liability for defamation" because the tort "does no more than hold the originator of the defamatory statement liable for damages caused by the statement where the originator knows, or should know, of circumstances whereby the defamed person has no reasonable means of avoiding publication of the statement or avoiding the resulting damages." *Id.* at 888.

---

[8] Defendants also argue that Mr. Bergh's motion to amend is made in bad faith as to his malicious prosecution claim. Because the Court has found the pleadings as to malicious prosecution futile based on the probable cause element above, it does not reach this argument.

18

Here, Mr. Bergh alleges that Defendants' defamatory statements resulting in the charges brought by Nobles County "have compelled, and continue to compel Bergh to defame himself through self-defamation as he is always asked when applying for a new position, whether or not he has been charged with criminal sexual conduct, or ever had a hospital refuse to hire him because of past unprofessional conduct." (Pl.'s Ex. B ¶ 58.) Mr. Bergh further alleges that even though Nobles County dismissed the criminal case against him and the records of its existence have been expunged, "he is forced to repeatedly acknowledge these false accusations . . . ." (*Id.*) Despite imploring Defendants to correct their errors, Mr. Bergh alleges Sanford informed him that

> it has been decided that Sanford intends to continue to send out negative work references, even though they know it gives the receiver a wrong impression. Mr. Bergh recalls on that date that he was informed Sanford intends to continue to send out these negative work references, even though they know the reports from the original nurses were incorrect, and that Bergh did nothing wrong, and the complaint had been processed by the Nobles County District Court and the Minnesota Board of Nursing, and that the criminal record had been expunged.

(*Id.* ¶ 56.) The inference resulting is that because Defendants continue to disclose Mr. Bergh's negative termination—which he alleges constitutes defamation—he is forced to repeat that defamation to prospective employers as well.

The problem with these self-defamation pleadings is that they rely on a viable underlying defamation claim as to Defendants' work references for Mr. Bergh. The Court has already determined that Defendants' subjective professional references about Mr. Bergh provided to prospective employers are shielded from liability for defamation in Minnesota because those references are given for a proper purpose and motive and are

based on reasonable cause. *See Stuempges*, 297 N.W.2d at 256–57; *Hunt*, 465 N.W.2d at 96. The Court likewise found that Mr. Bergh's allegations did not plausibly show that Defendants acted in bad faith or with malice in making those professional references, which would defeat the qualified privilege protecting them. *See Bauer*, 511 N.W.2d at 450. And the Court is guided by Minnesota's cautions that the scope of a viable defamation claim should not be substantially broadened by the tort of self-defamation, which would surely be the case if the Court determined that Defendants *were not* liable for defamation, but *were* liable for self-defamation. *See Lewis*, 389 N.W.2d at 888. The Court therefore finds that denial of leave to file Mr. Bergh's proposed TAC as to self-defamation is appropriate because his pleadings are futile.

**E.    Mr. Bergh's proposed amendments as to his false light portrayal claim are futile because Minnesota does not recognize the tort of false light publicity, and the Court finds no reason to apply South Dakota law piecemeal to this claim.**

"False light publicity occurs when one 'gives publicity to a matter concerning another that places the other before the public in a false light" so long as the that representation "would be highly offensive to a reasonable person, and" the individual knew "or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn. 1998) (citing Restatement (Second) of Torts, § 652E (1977)). There is no way for Mr. Bergh to succeed on a false light claim under Minnesota law because the state considered and expressly declined to adopt this cause of action. *Id.* at 236 (finding the tort of defamation better protects First Amendment free speech because "over the years [defamation] has become subject to numerous restrictions to protect the interest in a free

press and discourage trivial litigation, [whereas] the tort of false light is not so restricted."); *Price v. Viking Press, Inc.*, 625 F. Supp. 641, 651 (D. Minn. 1985) (finding a federal court cannot recognize a tort that the underlying state has not recognized). Mr. Bergh claims that his proposed false light claim is viable because he brings it not under Minnesota law, but under the law of South Dakota that does recognize the tort. Defendants argue in response that there is no reason to depart from the law of Minnesota as to any portion of Plaintiff's claims.

To decide a choice-of-law question, "[a] federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 65 (2013); *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001). First, a court must "inquire whether differing state laws present an outcome-determinative conflict and whether each law constitutionally may be applied to the case at hand." *Blake Marine Grp. v. CarVal Investors LLC*, 829 F.3d 592, 595 (8th Cir. 2016). If the answers to these questions are yes, then a court must decide whether the rule of law at issue is substantive or procedural. *Glover v. Merck & Co.*, 345 F. Supp. 2d 994, 998 (D. Minn. 2004). If it is procedural, then Minnesota applies its own law, but a substantive issue requires the Court to apply a "multi-step choice-of-law analysis, which includes application of five choice-influencing considerations, to determine which state's law applies.'" *Id.* (quoting *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn. 1994)).

Here, there is an actual conflict between Minnesota and South Dakota law because South Dakota recognizes the tort of false light publicity, *Berry v. Nat'l Broad. Co.*, 480

F.2d 428, 431 (8th Cir. 1973), and Minnesota does not, *Lake*, 582 N.W.2d at 233. *See*

*Jepson*, 513 N.W.2d at 469 ("[T]he first consideration is whether the choice of one state's

law over another's creates an actual conflict."). Either state's law can be constitutionally

applied here because both Minnesota and South Dakota have "a significant contact or

significant aggregation of contacts, creating state interests, such that the choice of its law

is neither arbitrary nor fundamentally unfair." *Allstate Ins. v. Hague*, 449 U.S. 302, 312–

13 (1981); *see also Sigler v. Ecolab, Inc.*, 625 F. Supp. 3d 789, 800 (D. Minn. 2022)

(finding sufficient contacts for both the state where the plaintiff resided and her alleged

injury occurred, and the state in which the corporate defendant had its primary place of

business). And because the rule of law at issue is substantive, the question is whether the

five choice-influencing factors favor Minnesota or South Dakota's application of law.

These factors include: "(1) predictability of result; (2) maintenance of interstate and

international order; (3) simplification of the judicial task; (4) advancement of the forum's

governmental interest; and (5) application of the better rule of law." *Jepson*, 513 N.W.2d

at 470.

The Court finds that the factors generally favor applying Minnesota law. The third

and fifth factor play a lesser part, as it is not particularly burdensome to apply South Dakota

law for the tort of false light, and the fifth factor is typically used as a tiebreaker when the

remaining factors leave the outcome uncertain. *See Fredin v. City Pages*, No. 19-cv-472

(DWF/TNL), 2020 WL 3064721, at *6 (D. Minn. May 19, 2020) ("The Court must address

"[c]oncern for the 'better law' . . . only when other choice-influencing considerations leave

the choice of law uncertain.") (quoting *Myers v. Gov't Emp. Ins.*, 225 N.W.2d 238, 244

(Minn. 1974)), *R. & R. adopted sub nom. Fredin v. Pages*, 2020 WL 3062537 (D. Minn. June 9, 2020), *aff'd sub nom. Fredin v. City Pages*, No. 20-2424, 2020 WL 8028255 (8th Cir. Oct. 28, 2020). The Court next turns to the remaining factors below.

As to the first factor relating to predictability, this factor "is most relevant when parties have expectations about the applicable law, such as in 'consensual transactions where people should know in advance what law will govern their act,' but has less relevance in cases such as accidents when the parties could not reasonably have such expectations." *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1394 (8th Cir. 1997) (quoting *Milkovich v. Saari*, 203 N.W.2d 408, 412 (1973)). "Predictability of results 'addresses whether the choice of law was predictable before the time of the transaction or event giving rise to the cause of action.'" *Sigler*, 625 F. Supp. 3d at 800 (quoting *Danielson v. Nat'l Supply Co.*, 670 N.W.2d 1, 7 (Minn. Ct. App. 2003) (emphasis omitted)). The factor is meant to result in uniformity so that regardless of where litigation is brought, cases with the same facts will be decided similarly to avoid forum-shopping. *Id.*

The alleged tortious conduct here concerns the incident that occurred in Minnesota on August 15, 2022, and what followed from it. Considering that the allegations about this event relate to claims made to Minnesota authorities about a nurse anesthetist licensed in Minnesota and a patient undergoing surgery in Minnesota, it appears a reasonable assumption that Minnesota law would likely apply.[9] The allegations in the TAC are that

---

[9] Indeed, this appeared to the Court to be the parties' singular position too: Mr. Bergh's memorandum in opposition to Defendants' motion to dismiss cites only Minnesota law for

Sanford is headquartered in South Dakota and Dr. Zoelle resides and works in South Dakota. (*See* Pl.'s Ex. B ¶¶ 7–8.) The Court therefore draws the inference that communications that Plaintiff claims amount to tortious conduct originated from the South Dakota headquarters, providing some reason for the application of South Dakota law to be anticipated. *See Greenstate Credit Union v. Hy-Vee, Inc.*, 549 F. Supp. 3d 969, 977–78 (D. Minn. 2021) (holding predictability favored applying the state law of the state in which the corporate defendant was incorporated and headquartered for negligence claims focusing on that corporation's decision-making conduct that occurred through its employees in that state), *appeal dismissed per stipulation*, No. 21-2867 (8th Cir. May 12, 2022). Yet the fact that Defendants operate medical facilities in Minnesota also creates a reasonable presumption that if Defendants employ a medical professional such as Mr. Bergh— licensed in Minnesota to perform medical procedures on patients in Minnesota— Minnesota law will apply to torts arising from such circumstances. On balance, the Court finds that the majority of Mr. Bergh's allegations give rise to a reasonable presumption that Minnesota law will apply. This factor therefore favors the application of Minnesota law.

The second factor of maintaining interstate and international order is intended to deter the negative effects of forum-shopping. *See Jepson*, 513 N.W.2d at 471 ("we are primarily concerned with whether the application of Minnesota law would manifest disrespect for North Dakota's sovereignty or impede the interstate movement of people

---

the claims that are the subject of that motion (Doc. 31), and his memorandum in support of his motion to amend to add his false light claim made no mention of South Dakota law (Doc. 33). It was not until the hearing on Mr. Bergh's motion to amend that he asserted for the first time that South Dakota law should apply to this claim (but only this claim).

and goods" where one "aspect of this concern is to maintain a coherent legal system in which the courts of different states strive to sustain, rather than subvert, each other's interests in areas where their own interests are less strong."). Torts are generally treated as having little effect on the maintenance of interstate order. *See Kenna v. So-Fro Fabrics, Inc.*, 18 F.3d 623, 626 (8th Cir. 1994). That said, the strongest state interest typically follows the state with the most significant contacts with the facts relevant to the litigation, *see In re Baycol Prods. Litig.*, 218 F.R.D. 197, 207 (D. Minn. 2003), as well as the state where the plaintiff is domiciled and allegedly sustained the harm, *see Blake Marine*, 829 F.3d at 596. Minnesota's contacts are more substantial here, given that the originating incident occurred in Minnesota, the plaintiff is domiciled and alleges his harm largely occurred in Minnesota, and the torts alleged involve Minnesota's Nursing Board and a Minnesota County. Additionally, the torts implicate Minnesota statutes governing Minnesota's healthcare providers and the maltreatment of vulnerable adults in Minnesota, as well as the immunities that attach in complying with those statutes. This second factor also favors Minnesota law.

As to the fourth factor concerning the advancement of the forum's governmental interest, here the Court is tasked with considering which state's laws should be applied based on each state's policy interests. *See id*. That Mr. Bergh is a Minnesota resident injured in Minnesota, assuming his claims are true, favors the application of Minnesota law. *See Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 965 (D. Minn. 2020) ("This factor 'generally weighs in favor of application of the state law in which the plaintiff lives and in which the injury occurred.'") (quoting *In re Baycol Prods. Litig.*, 218 F.R.D.

25

at 207), *aff'd*, 9 F.4th 981 (8th Cir. 2021). And, as discussed above, Minnesota has a governmental interest in giving effect to its statutes governing the provision of healthcare in Minnesota and the maltreatment of vulnerable adults. Minnesota likewise has an interest in ensuring that a business that operates within the state does so without harm to others. This is balanced against South Dakota's interests in giving corporations headquartered in South Dakota predictability of results in torts resulting from their business endeavors. On balance, this factor also favors applying Minnesota law to Mr. Bergh's claims.

The Court thus concludes that the choice-of-law analysis favors applying Minnesota law to Mr. Bergh's claims. Because Minnesota does not recognize a false light tort claim, the Court finds that pleading such a claim in the proposed TAC is futile.

**ORDER**

Accordingly, based on all the files, records, and proceedings in this case, **IT IS ORDERED** that:

1. Plaintiff Craig J. Bergh's Motion to Amend the Pleadings (Doc. 32) is **DENIED** because the proposed amendments are futile; and

2. The Clerk of Court is directed to correct the identification of Defendant Sanford Health on the case docket by changing "Sanford Health Network" to "Sanford Health."

Date: February 3, 2025                    *s/Douglas L. Micko*
                                      DOUGLAS L. MICKO
                                      United States Magistrate Judge