UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

CRAIG J. BERGH,

                                        Civil No. 24-3054 (JRT/DLM)

           Plaintiff,

v.

SARA ZOELLE and SANFORD HEALTH,

**MEMORANDUM OPINION AND ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER**

           Defendants.

---

Paul A. Sortland, **SORTLAND LAW OFFICE**, 431 South Seventh Street, Suite 2415, Minneapolis, MN 55415, for Plaintiff.

Stephanie M. Laws and Steven L. Schleicher, **MASLON LLP**, 225 South Sixth Street, Suite 2900, Minneapolis, MN 55402, for Defendants.

Plaintiff Craig J. Bergh brings this action against Defendants Sanford Health and Sara Zoelle (collectively "Sanford Health") for defamation, tortious interference with prospective advantage, and malicious prosecution. After Sanford Health moved to dismiss the Complaint for failure to state a claim, Bergh moved to amend his pleadings. Magistrate Judge Douglas L. Micko denied Bergh's motion to amend based on futility. Bergh timely appeals that denial. Because Bergh's proposed amendments are futile, the Court will affirm the Magistrate Judge's order and deny Bergh's appeal.

## BACKGROUND

After being terminated from his employment as a nurse anesthetist at Sanford Health, Bergh brought this action, alleging that Sanford Health defamed him, tortiously

interfered with his prospective employment, and engaged in malicious prosecution. (*See generally* Compl., July 31, 2024, Docket No. 1; 2nd Am. Compl. ("SAC"), Aug. 14, 2024, Docket No. 13.)  Bergh's claims stem from an incident on August 15, 2022 ("Incident"), where operating room personnel perceived Bergh's breast examination of a female sedated patient before positioning her for prone, or face-down, surgery, as having been done in a "tawdry manner" and "for an improper or lascivious purpose." (SAC ¶¶ 16, 23–25, 28.)  After the incident was reported to the hospital, Sanford Health immediately reviewed the matter and determined that Bergh's conduct was unprofessional. (*Id.* ¶¶ 29–31, 36–37, 43.)  Bergh's contract with Sanford Health was terminated on October 6, 2022, and the Incident was reported to the Nobles County Attorney's Office and Minnesota Board of Nursing. (*Id.* ¶¶ 39–40, 45.)  Though the criminal charges were eventually dropped and the Minnesota Board of Nursing decided that no disciplinary action was necessary, Bergh has struggled to find new employment, as Sanford Health routinely explains to Bergh's prospective employers that he was "terminated for unprofessional conduct." (*Id.* ¶¶ 43–44, 46–49.)

Shortly after Sanford Health moved to dismiss the operative complaint, Bergh moved to amend his complaint. (Def.'s Mot. Dismiss, Sept. 5, 2024, Docket No. 21; Pl.'s Mot. Alter/Amend/Suppl. Pleadings, Sept. 26, 2024, Docket No. 32.)  He also moved to strike Sanford Health's memorandum in support of its motion to dismiss. (Pl.'s Mot. Strike, Sept. 26, 2024, Docket No. 28.)  The proposed Third Amended Complaint bolsters

Bergh's previous three claims for defamation, tortious interference with prospective advantage, and malicious prosecution, and adds two new causes of action: self-defamation and false light portrayal.  (Decl. of Paul A. Sortland ¶ 4, Ex. B ("TAC") ¶¶ 61–98, Sept. 26, 2024, Docket No. 34.)

The Magistrate Judge denied Bergh's motion to amend the complaint on futility grounds.  *Bergh v. Sanford Health*, No. 24-3054, 2025 WL 368845, at *11 (D. Minn. Feb. 3, 2025).  Bergh timely appealed that denial.  (Appeal/Obj. of Magistrate Judge Decision, Feb. 18, 2025, Docket No. 51.)

**DISCUSSION**

I.     **STANDARD OF REVIEW**

Magistrate judges may hear and determine certain pretrial matters under the Federal Magistrate Judges Act.  28 U.S.C. § 636(b)(1)(A); *accord* D. Minn. LR 72.1(a)(2).  The standard of review applicable to an appeal of a magistrate judge's order on non-dispositive pretrial matters is extremely deferential.  *Magee v. Trs. of the Hamline Univ.*, 957 F. Supp. 2d 1047, 1062 (D. Minn. 2013).  The Court will reverse such an order only if it is clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3).  However, the Court reviews de novo a magistrate judge's determination that a motion to amend a pleading will be denied because the amendment would be futile.  D. Minn. LR 72.2(a)(3)(B); *accord Magee*, 957 F. Supp. 2d at 1062; *cf. In re NVE Corp. Sec. Litig.*, 527 F.3d 749, 752 (8th Cir. 2008) ("We ordinarily review the denial

of leave to amend a complaint for abuse of discretion, but when the district court denies leave on the basis of futility we review the underlying legal conclusions de novo.").

Federal Rule of Civil Procedure 15 provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend should be denied where there are "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Hammer v. City of Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003) (internal quotation marks omitted). An amendment is futile if it fails to create claims that would withstand a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Lunsford v. RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

**II.  ANALYSIS**

Bergh challenges the Magistrate Judge's decision that amendment would be futile, which the Court will review de novo.

**A.  Defamation**

Bergh alleges three defamatory statements: (1) the report to Nobles County regarding the Incident, (2) the report to the Minnesota Board of Nursing regarding the Incident, and (3) reference statements to prospective employers that Bergh's contract was terminated for "unprofessional conduct."  (TAC ¶¶ 62, 65.)

A claim for defamation under Minnesota law has three elements: "(1) the defamatory statement is 'communicated to someone other than the plaintiff,' (2) the statement is false, and (3) the statement 'tend[s] to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community.'"  *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919–20 (Minn. 2009) (quoting *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980)); *see also Nelson v. Lake Elmo Bank*, 75 F.4th 932, 941 (8th Cir. 2023).  "A statement is defamatory when it tend[s] to injure the plaintiff's reputation and expose the plaintiff to public hatred, contempt, ridicule, or degradation."  *Erickson v. Sawyer*, 650 F. Supp. 3d 758, 765 (D. Minn. 2023) (quotation omitted), *appeal dismissed*, No. 23-1191, 2023 WL 4875190 (8th Cir. May 12, 2023).

Allegedly defamatory statements may be protected by statutory immunity or qualified privilege.  Minnesota law immunizes good faith reports of suspected maltreatment of vulnerable adults from civil or criminal liability.  Minn. Stat. § 626.557,

subd. 5. Minnesota law also immunizes good faith reports to the Minnesota Board of Nursing for conduct by a licensed nurse that constitutes grounds for discipline. Minn. Stat. §§ 148.263, subd. 1, 148.264, subd. 1. These statutory protections may apply to the allegedly defamatory reports to Nobles County and the Minnesota Board of Nursing. To survive statutory immunity, Bergh has to adequately plead that Sanford Health lacked good faith. *E.g.*, *Thompson v. Olsten Kimberly Quality-Care, Inc.*, 980 F. Supp. 1035, 1038 (D. Minn. 1997).

In addition, a statement can be protected by a qualified privilege if it was "made on a proper occasion and for a proper purpose, and [was] based upon reasonable or probable grounds . . . even if it later proves to be false." *Palmisano v. Allina Health Sys., Inc.*, 190 F.3d 881, 885 (8th Cir. 1999). Courts have found that employers have a proper purpose and motive for sharing information about former employees with prospective employers. *Hunt v. Univ. of Minn.*, 465 N.W.2d 88, 92 (Minn. Ct. App. 1991). Sanford Health's allegedly defamatory statements to prospective employers may be protected by qualified privilege. To overcome qualified privilege, Bergh must adequately plead that Sanford Health acted with actual malice, i.e., that the Defendants had personal ill-will against Bergh or used exaggerated language when making the allegedly defamatory statements. *Bahr*, 766 N.W.2d at 920.

Even with the proposed amendments in the proposed Third Amended Complaint, Bergh's defamation claim cannot survive statutory immunity or qualified privilege.

Bergh's primary argument is that Sanford Health lacked good faith and acted with actual malice by failing to conduct a proper investigation of the Incident. The proposed Third Amended Complaint alleges it was erroneous for Sanford Health to fail to invite anesthetists or other physicians familiar with prone positioning practices to make statements to Sanford Health's investigating committee before Sanford Health made the allegedly defamatory statements to Nobles County, the Minnesota Board of Nursing, and prospective employers. (*See* TAC ¶¶ 27–44.) But any failure by Sanford Health to more thoroughly investigate this matter does not necessarily constitute lack of good faith or actual malice. In fact, a failure to investigate at all does not, alone, indicate lack of good faith or actual malice. *Cf. Connelly v. Nw. Publ'ns, Inc.*, 448 N.W.2d 901, 905 (Minn. Ct. App. 1989) (finding that a failure to investigate a news article standing alone could not establish actual malice); *Speer v. Ottaway Newspapers, Inc.*, 828 F.2d 475, 478 (8th Cir. 1987) (same). And while failure to investigate could mean negligence, "[i]t does not establish knowledge of falsity or serious doubt about the truth of the story." *Connelly*, 448 N.W.2d at 905. Though contacting an anesthetist or other physician with medical expertise in prone positioning before reporting the Incident would have been ideal and a better practice, Sanford Health was operating under a statutorily-mandated immediate timeframe; its failure to do more in its investigation does not suggest lack of good faith or actual malice. *See* Minn. Stat. § 626.557, subd. 3(a) ("A mandated reporter who has reason to believe that a vulnerable adult is being or has been maltreated, or who has

knowledge that a vulnerable adult has sustained a physical injury which is not reasonably explained shall **immediately** report the information.") (emphasis added).

After Sanford Health investigated the incident, the hospital credited the operating room personnel's perception that Bergh's breast examination on the sedated female patient was done in a tawdry manner and for an improper or lascivious purpose. Having reasonable suspicion that a vulnerable adult had been mistreated, Sanford Health acted in accordance with its statutory duties in reporting the incident to Nobles County and the Minnesota Board of Nursing. And it merely explained the truth of Bergh's contract termination when speaking with prospective employers.

Further, there are no facts in the proposed Third Amended Complaint reasonably suggesting that the operating room personnel who reported the Incident or Sanford Health held ill-will for Bergh, or that they used exaggerated language to describe the Incident in the alleged defamatory statements. *Issaenko v. Univ. of Minn.*, 57 F. Supp. 3d 985, 1033–35 (D. Minn. 2014) (dismissing defamation claim where the complaint contained no allegations that could be construed as showing malice). Even viewing all the facts in a light most favorable to Bergh, the proposed Third Amended Complaint fails to adequately allege lack of good faith or actual malice to overcome statutory immunity and qualified privilege.

Because the three allegedly defamatory statements are protected by statutory immunity and qualified privilege, the proposed amendments to the defamation claim would be futile.

### B.     Self-Defamation

The proposed Third Amended Complaint adds a new cause of action for self-defamation, alleging that "Because of [Sanford's allegedly defamatory statements], Bergh has been repeatedly compelled to answer questions to prospective employers as to whether he had ever been charged with criminal conduct related to his hospital services, or sexual misconduct, or for any improper conduct relating to his profession."  (TAC ¶ 72.)

Under Minnesota law, an employer can be liable for self-defamation if the plaintiff "was compelled to publish a defamatory statement to a third person," e.g., prospective employers, and "it was foreseeable to the defendant that the plaintiff would be so compelled."  *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 888 (Minn. 1986).  In recognizing this claim, the Minnesota Supreme Court noted that while self-defamation "provides a significant new basis for maintaining a cause of action for defamation," it should be "cautiously applied" such that it does not "substantially broaden the scope of liability for defamation."  *Id.*  Indeed, self-defamation is intended to "do[] no more than hold the originator of the defamatory statement liable for damages caused by the statement where the originator knows, or should know, of circumstances whereby the defamed person has no reasonable means of avoiding publication of the statement or avoiding the resulting damages."  *Id.*

Because the proposed amendments to the defamation claim are futile based on statutory immunity and qualified privilege, the proposed pleadings for the self-defamation claim, which are based upon the same allegedly defamatory statements, are also futile. To hold otherwise would directly ignore the mandate of the Minnesota Supreme Court by broadening the scope of liability for defamation through self-defamation.

### C. False Light Portrayal

The proposed Third Amended Complaint also adds a new cause of action for false light portrayal. The parties dispute whether Minnesota law or South Dakota law applies to this claim. The Court therefore must first conduct a choice of law analysis.

Because Minnesota is the forum state, its choice-of-law rules govern. *C.H. Robinson Worldwide, Inc. v. Traffic Tech., Inc.*, 60 F.4th 1144, 1148 (8th Cir. 2023). Under Minnesota's choice-of-law rules, the Court first determines whether there is an actual conflict between the states' laws, which exists when the choice is "outcome-determinative." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1123 (8th Cir. 2012). Here, Minnesota law does not recognize the tort of false light portrayal, while South Dakota law does. *Compare Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233–35 (Minn. 1998), *with Berry v. Nat'l Broad. Co.*, 480 F.2d 428, 430–31 (8th Cir. 1973) (citing *Truxes v. Kenco Enters., Inc.*, 119 N.W.2d 914 (S.D. 1963)). Thus, an actual conflict exists.

The next step is to determine whether the different states' laws can be constitutionally applied. *Whitney*, 700 F.3d at 1123 (citing *Jepson v. Gen. Cas. Co. of Wis.*,

513 N.W.2d 467, 469 (Minn. 1994)). Here, Minnesota or South Dakota's laws can be constitutionally applied because both states "have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Jepson*, 513 N.W.2d at 469 (quotation omitted). This action involves an incident that occurred in Minnesota, an employment relationship in Minnesota, a plaintiff domiciled in Minnesota who experienced most of his harm in Minnesota, and a Minnesota county attorney's office and Minnesota Board of Nursing. Meanwhile, Sanford Health is headquartered in South Dakota, and Defendant Zoelle lives and works in South Dakota. (TAC ¶¶ 7–8.) So, both states have sufficient contacts.

Finally, the last step is to apply "Leflar's five choice-influencing factors" to determine which state's law to apply. *Whitney*, 700 F.3d at 1124. This multifactored test considers the: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Id.* (quoting *Jepson*, 513 N.W.2d at 470). The importance of each factor depends on the specifics of the individual case. *Id.*

On balance, these factors weigh in favor of applying Minnesota law. First, the Court finds that under the circumstances, Minnesota law more predictably applies. The predictability factor, while generally more relevant in breach of contract cases, "addresses whether the choice of law was predictable before the time of the transaction or event giving rise to the cause of action." *Sigler v. Ecolab, Inc.*, 625 F. Supp. 3d 789, 800

(D. Minn. 2022) (quoting *Danielson v. Nat'l Supply Co.*, 670 N.W.2d 1, 7 (Minn. Ct. App. 2003)). While Sanford Health may be headquartered in South Dakota and Defendant Zoelle resides there, the parties more likely expected Minnesota law to apply because virtually all the events forming the claims took place in Minnesota. Furthermore, Bergh mentioned the application of South Dakota law for the first time in his reply brief in support of his motion to amend, likely because Minnesota law does not recognize his claim. So, the predictability factor weighs in favor of applying Minnesota law.

Second, the Court finds that applying Minnesota law would better maintain interstate and international order. This factor concerns "whether the application of Minnesota law would manifest disrespect for [South Dakota's] sovereignty or impede the interstate movement of people and goods." *Jepson*, 513 N.W.2d at 471. "An aspect of this concern is to maintain a coherent legal system in which the courts of different states strive to sustain, rather than subvert, each other's interests in areas where their own interests are less strong." *Id.* This factor is "generally satisfied as long as the state whose laws are purportedly in conflict has sufficient contacts with and interest in the facts and issues being litigated." *Sigler*, 625 F. Supp. 3d at 802 (quoting *Myers v. Gov't Emp. Ins. Co.*, 225 N.W.2d 238, 242 (Minn. 1974)). Minnesota has more than just a remote connection to this action; the Incident occurred there, Bergh resides there, and Bergh experienced most if not all of his alleged harm there. This factor weighs in favor of applying Minnesota law.

Third, the Court finds that applying either state's law would have little effect on the simplification of the judicial task. Applying Minnesota law might make more sense since it would be applied to the other claims in this action. But applying South Dakota law to just one claim would not unnecessarily complicate the judicial task. *See Sigler*, 625 F. Supp. 3d at 806. This factor is neutral.

Fourth, the Court finds that applying Minnesota law would better advance the forum's governmental interest. For this factor, the Court must "determine which state's law to apply based on 'the relative policy interests of the two states.'" *Blake Marine Grp. v. CarVal Invs. LLC*, 829 F.3d 592, 596 (8th Cir. 2016) (quoting *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 739 (8th Cir. 1995)). "Compensation of an injured plaintiff is primarily a concern of the state in which the plaintiff is domiciled." *Id.* (quoting *Kenna v. So-Fro Fabrics, Inc.*, 18 F.3d 623, 627 (8th Cir. 1994)); *see also Sigler*, 625 F. Supp. 3d at 807 ("This factor generally weighs in favor of application of the state law in which the plaintiff lives and in which the injury occurred." (alterations and citation omitted)). Bergh is domiciled in Minnesota and was injured in Minnesota, implicating Minnesota's interest in ensuring that its residents are compensated for injuries that occur within its state. In addition, Minnesota has a policy interest in restricting invasion of privacy torts, such as false light, from infringing on interests in free press and free speech guarantees of the First Amendment. *See Lake*, 582 N.W.2d at 236 (discussing the court's concerns with the tort of false light portrayal). Bergh does not clearly articulate South Dakota's governmental

-13-

interest here, other than the fact that the alleged corporate actions by Sanford Health arose out of South Dakota. Still, on balance, the fourth factor favors Minnesota law.

Finally, the Court finds that the fifth factor need not be evaluated. The Minnesota Supreme Court instructs that this part of the test "is to be exercised only when other choice-influencing considerations leave the choice of law uncertain." *Myers*, 225 N.W.2d at 368. Here, Minnesota law does not permit false light portrayal claims, and Minnesota's governmental interests dictate that the Court should honor that restriction. Therefore, the Court need not consider which law is the better law.

Because the factors generally favor applying Minnesota law, which does not recognize the tort of false light portrayal, the proposed amendments to add such a tort are futile.

### D. Tortious Interference with Prospective Advantage

The proposed Third Amended Complaint supplements Bergh's prior allegations that Sanford Health tortiously interfered with his prospective employment by providing reference statements that Bergh's contract was terminated because of "unprofessional conduct." (TAC ¶¶ 84–88.)

Under Minnesota law, a claim for tortious interference with prospective economic advantage has five elements: (1) "the existence of a reasonable expectation of economic advantage[,]" (2) the defendant's "knowledge of that expectation of economic advantage[,]" (3) that the "defendant intentionally interfered with the plaintiff's reasonable expectation of economic advantage, and the intentional interference is either

independently tortious or in violation of a state or federal statute or regulation[,]" (4) "[t]hat in the absence of the wrongful act of the defendant, it is reasonably probable that the plaintiff would have realized his economic advantage or benefit[,]" and (5) the plaintiff suffered damages. *Gieseke ex rel. Diversified Water Division, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014); *C.H. Robinson Worldwide*, 60 F.4th at 1150–51.

The issue is whether the proposed Third Amended Complaint adequately alleges that any interference by Sanford Health was improper, meaning it was "intentional and independently tortious or unlawful, rather than merely unfair." *Gieseke*, 844 N.W.2d at 218. Improper interference is satisfied if the defendant acted "wantonly, willfully, and intentionally for the purpose of wrongfully [interfering]." *Witte Transp. Co. v. Murphy Motor Freight Lines, Inc.*, 193 N.W.2d 148, 151 (Minn. 1971); *see also Inline Packaging, LLC v. Graphic Packaging Int'l LLC*, 351 F. Supp. 3d 1187, 1214–15 (D. Minn. 2018).

Bergh does not dispute that the tort underlying his tortious interference claim is defamation. The Court has already determined that the proposed amendments to the defamation claim are futile because Sanford Health's allegedly defamatory statements are protected by statutory immunity and qualified privilege. Bergh has not adequately pleaded that any failure by Sanford Health to more thoroughly investigate the Incident within the short timeframe permitted under the mandatory reporting requirements constituted lack of good faith or actual malice to overcome these privileges. Similarly, here, the proposed amendments to the tortious interference with prospective advantage

-15-

do not adequately plead that Sanford Health acted "wantonly, willfully, and intentionally for the purpose of wrongfully [interfering]" with any of Bergh's prospective employment relationships. *Witte*, 193 N.W.2d at 151. Any shortcomings in Sanford Health's investigation of the underlying incident do not suggest intentional, improper conduct by Sanford Health. Accordingly, the proposed amendments to the tortious interference with prospective advantage claim are futile.

### E.  Malicious Prosecution

The proposed Third Amended Complaint also adds factual support to the malicious prosecution claim. In this claim, Bergh alleges that Sanford Health engaged in malicious prosecution by causing him to be prosecuted in the Nobles County Attorney's Office. (TAC ¶¶ 90–98.)

A claim for malicious prosecution under Minnesota law has four elements: (1) proceedings were initiated (2) without probable cause and (3) with malice, and (4) the proceedings terminated in the defendant's favor. *Cox v. Lauritsen*, 147 N.W. 1093, 1094 (Minn. 1914); *Nygard v. City of Orono*, 39 F.4th 514, 521 (8th Cir. 2022). "[M]alicious prosecution claims against any party are strongly disfavored and have 'always been carefully circumscribed.'" *Bahr v. County of Martin*, 771 F. Supp. 970, 979–80 (D. Minn. 1991) (quoting *Lundberg v. Scoggins*, 335 N.W.2d 235, 236 (Minn. 1983)). In the malicious prosecution context, probable cause means "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Nygard*, 39

-16-

F.4th at 521. "Only reasonable belief that probable cause existed is necessary to negate a malicious prosecution claim." *Id.* (quoting *Dunham v. Roer*, 708 N.W.2d 552, 569 (Minn. Ct. App. 2006)).

Bergh insists that Sanford Health lacked reasonable suspicion of the crime because it knew or should have known that there was an inadequate investigation into whether Bergh's conduct constituted standard anesthetic procedure. But the proposed amendments fail to demonstrate that Sanford Health lacked reasonable suspicion when it made its report to Nobles County. Even viewing the facts in a light most favorable to Bergh, Sanford Health reasonably suspected that a vulnerable adult had been mistreated given the operating room personnel's credited perception of the Incident. Working under short time constraints given the mandatory reporting requirements, Sanford Health acted quickly by immediately reporting the Incident to Nobles County after a swift investigation. As mentioned, a more thorough investigation into the matter would have been much better, but it is difficult to square Sanford Health's swift attempt to investigate the Incident with Minnesota law's "immediate" reporting requirements. *See* Minn. Stat. § 626.557, subd. 3(a). Any failure by Sanford Health to more thoroughly investigate this matter within the short timeframe permitted under the mandatory reporting requirements does not mean that Sanford Health lacked reasonable suspicion that a vulnerable adult had been mistreated. Because there was probable cause, the proposed amendments to the tortious interference with prospective advantage claim are futile.

## CONCLUSION

Because the proposed amendments are futile, the Magistrate Judge did not abuse his discretion in denying Bergh's motion to amend his complaint. Accordingly, the Court will affirm the Magistrate Judge's order and deny Bergh's appeal.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Magistrate Judge's February 3, 2025 Order [Docket No. 50] is **AFFIRMED**.

2. Plaintiff's Appeal/Objection of Magistrate Judge Decision [Docket No. 51] is **DENIED**.

DATED: June 18, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge