**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

CRAIG J. BERGH,

                                                        Civil No. 24-3054 (JRT/DLM)

                                Plaintiff,

v.

                                                        **MEMORANDUM OPINION AND ORDER**
SARA ZOELLE and SANFORD HEALTH,                         **GRANTING DEFENDANT'S MOTION TO**
                                                        **DISMISS AND DENYING PLAINTIFF'S**
                                Defendants.              **MOTION TO STRIKE**

---

Paul A. Sortland, **SORTLAND LAW OFFICE**, 431 South Seventh Street, Suite 2415, Minneapolis, MN 55415, for Plaintiff.

Stephanie M. Laws and Steven L. Schleicher, **MASLON LLP**, 225 South Sixth Street, Suite 2900, Minneapolis, MN 55402, for Defendants.

Plaintiff Craig J. Bergh's employment was terminated after a surgical nurse perceived Bergh's breast examination of a sedated female patient to be done in a "tawdry manner" and "for an improper or lascivious purpose." Bergh brings this action against Defendants Sanford Health and Sara Zoelle (collectively "Sanford Health") for defamation, tortious interference with prospective advantage, and malicious prosecution. Sanford Health moves to dismiss the Second Amended Complaint for failure to state a claim. Bergh moves to strike Sanford Health's memorandum in support of its motion to dismiss. Because the Second Amended Complaint fails to state a claim for relief, the Court will grant the motion to dismiss. Because a motion to strike is the improper avenue through

which to challenge Sanford Health's memorandum, the Court will deny Bergh's motion to strike.

## BACKGROUND

### I.    FACTS

Bergh, a certified registered nurse anesthetist, has provided anesthesia services to Sanford Health in Worthington, Minnesota since 1999. (2nd Am. Compl. ("SAC") ¶¶ 1, 14, Aug. 14, 2024, Docket No. 13.) During the period underlying this action, Bergh had a contract to provide locum tenens services to Sanford Health. (*Id.* ¶¶ 1, 15.)

On the morning of August 15, 2022, Bergh began preparing for the positioning of a sedated female patient who would undergo prone, or face-down, surgery. (*Id.* ¶ 16.) The positioning of the patient was complicated by the fact that she had undergone a double mastectomy and had breast implants. (*Id.*) It is important that a female patient who is placed in the prone position for surgery is placed on certain gel-filled pads, or chest rolls, to suspend her body off the surgical bed so that her breasts are not in contact with or are only lightly in contact with the mattress. (*Id.* ¶ 17.) Such positioning is necessary to prevent breast damage, especially if the patient has had a mastectomy and/or breast implants, as Bergh's patient had. (*Id.* ¶¶ 17, 20–21.)

Unfortunately, the proper chest rolls for adults were not available on August 15, 2022; only pediatric chest rolls were available. (*Id.* ¶¶ 16, 18–19.) As a result, the patient's positioning would need to be checked periodically throughout the procedure—which was anticipated to last three hours—to ensure that her breasts were not in contact

with or were only lightly in contact with the mattress. (*Id.* ¶¶ 17–18, 23.) While wearing surgical gloves, and before turning the sedated patient into the prone position, Bergh carefully examined the patient's breasts to determine the size and location of any breast implant and whether there were any lumps, encapsulations, or inflammations of the breast tissue. (*Id.* ¶¶ 23–24.) Bergh described his evaluation as standard practice for prone positioning. (*Id.* ¶¶ 24–25.) After determining that the patient's breast implants were small enough that the pediatric chest rolls could work, Bergh moved the patient into the prone position for surgery. (*Id.* ¶ 27.)

The operating room personnel witnessed Bergh's conduct and perceived Bergh's assessment to have been done in a "tawdry manner" and "for an improper or lascivious purpose." (*Id.* ¶¶ 25, 28.) A surgical nurse—who had little to no experience with the proper examination of a patient for prone positioning—reported Bergh's actions to the hospital. (*Id.* ¶ 29.) The matter was immediately reviewed by a Sanford Professional Committee led by Defendant Sara Zoelle, a medical doctor serving as Chief Medical Officer for Sanford Health—who also had little to no experience with the proper examination of a patient for prone positioning. (*Id.* ¶¶ 4, 29, 31.) Operating room personnel who witnessed the incident were not invited to make a statement concerning the situation to the committee, nor were other anesthetists, anesthesiologists, or physicians. (*Id.* ¶ 32.)

Later in the day on August 15, 2022, Zoelle met with Bergh to discuss the incident by Zoom conference. (*Id.* ¶ 34.) Zoelle asked Bergh if he had obtained written or oral

consent for the breast examination; Bergh replied that he had not, as it was part of standard anesthesia care. (*Id.*) Zoelle stated that Sanford had a policy requiring written or oral consent for all breast exams, which Bergh disputes. (*Id.* ¶¶ 34–35, 38.) Zoelle indicated that Bergh had committed a Felony IV Sexual Assault on a vulnerable adult, and that his actions would be reported to the police and to the Minnesota Board of Nursing. (*Id.* ¶ 36.) Zoelle warned that Bergh could lose his professional license and go to jail. (*Id.* ¶ 37.) Bergh had never been accused of misconduct before and had a visceral physical reaction to Zoelle's statements. (*Id.*) Bergh's contract with Sanford Health was terminated on October 6, 2022. (*Id.* ¶ 39.)

On or about August 15, 2022, Zoelle "caused" Sanford Health to issue a report to the Nobles County Attorney's Office that Bergh had engaged in "improper conduct." (*Id.* ¶ 40.) The matter was investigated by the County Attorney's Office, which filed a criminal complaint against Bergh in Nobles County. (*Id.* ¶ 41.) The charges were ultimately dismissed. (*Id.* ¶ 44.) In addition, on or about August 15, 2022, Sanford Health filed a complaint against Bergh with the Minnesota Board of Nursing, which issued a warning letter of inquiry to Bergh. (*Id.* ¶ 45.) The Board of Nursing decided that disciplinary action was not warranted. (*Id.* ¶¶ 46–47.)

Bergh has struggled to find new employment as a result of this incident and has suffered various health issues, as well as a "substantial loss of income, reputation, and prestige." (*Id.* ¶¶ 50–51.) When potential employers seek a reference from Sanford

Health, Sanford Health routinely responds that Bergh was "terminated for unprofessional conduct." (*Id.* ¶¶ 43, 48–49.)

## II.    PROCEDURAL HISTORY

Bergh initiated this action on July 31, 2024. (Compl., Docket No. 1.) He asserts claims for defamation, tortious interference with prospective advantage, and malicious prosecution. (SAC ¶¶ 52–71.) Sanford Health filed a motion to dismiss the Second Amended Complaint for failure to state a claim. (Defs.' Mot. Dismiss, Sept. 5, 2024, Docket No. 21.) Bergh filed a motion to strike Sanford Health's memorandum in support of its motion to dismiss. (Pl.'s Mot. Strike, Sept. 26, 2024, Docket No. 28.)

Bergh also moved for leave to amend his pleadings after Sanford Health filed the motion to dismiss. Magistrate Judge Douglas L. Micko denied Bergh's request, and Bergh appealed that denial to this Court. *Bergh v. Sanford Health*, No. 24-3054, 2025 WL 368845, at *11 (D. Minn. Feb. 3, 2025); (Appeal/Obj. of Magistrate Judge Decision, Feb. 18, 2025, Docket No. 51.) The Court denied Bergh's appeal and affirmed the Magistrate Judge's order.

## DISCUSSION

## I.    MOTION TO DISMISS

### A.    Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588

F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court construes the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.  *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), or mere "labels and conclusions or a formulaic recitation of the elements of a cause of action," *Iqbal*, 556 U.S. at 678 (quotation omitted).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### B.    Analysis

Sanford Health argues that all three of Bergh's claims fail to state a claim.  The Court will analyze each in turn.

#### 1.    Defamation

Bergh alleges Sanford Health defamed him when reporting and discussing the August 15, 2022, incident with Nobles County, the Minnesota Board of Nursing, and prospective employers.

A claim for defamation under Minnesota law has three elements: "(1) the defamatory statement is 'communicated to someone other than the plaintiff,' (2) the statement is false, and (3) the statement 'tend[s] to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community.'"  *Bahr v. Boise Cascade Corp.*,

766 N.W.2d 910, 919–20 (Minn. 2009) (quoting *Stuempges v. Parke, Davis & Co.*, 297

N.W.2d 252, 255 (Minn. 1980)); *see also Nelson v. Lake Elmo Bank*, 75 F.4th 932, 941 (8th

Cir. 2023). "A statement is defamatory when it tend[s] to injure the plaintiff's reputation

and expose the plaintiff to public hatred, contempt, ridicule, or degradation." *Erickson v.*

*Sawyer*, 650 F. Supp. 3d 758, 765 (D. Minn. 2023) (quotation omitted), *appeal dismissed*,

No. 23-1191, 2023 WL 4875190 (8th Cir. May 12, 2023).

Bergh alleges three defamatory statements. First, the report to Nobles County

regarding the incident on August 15, 2022. Second, the report to the Minnesota Board of

Nursing regarding the incident on August 15, 2022. And third, the reference statements

to prospective employers that Bergh's contract was terminated for "unprofessional

conduct." Sanford Health challenges these alleged defamatory statements based on

pleading specificity, failure to allege a false statement, and privilege.

### a. Pleading Specificity

As an initial matter, Minnesota law requires that defamation claims be pleaded

with "a certain degree of specificity." *Sherr v. HealthEast Care Sys.*, 999 F.3d 589, 597 (8th

Cir. 2021) (quoting *Thompson v. Campbell*, 845 F. Supp. 665, 679 (D. Minn. 1994)). "While

plaintiffs may not have to directly quote the allegedly defamatory words," *id.*, at a

minimum a defamation claim must allege "who made the defamatory statements, to

whom were they made, and where." *Walker v. Wanner Eng'g, Inc.*, 867 F. Supp. 2d 1050,

1056 (D. Minn. 2012) (citing *Pinto v. Internationale Set, Inc.*, 650 F. Supp. 306, 309 (D.

Minn. 1986)). *But see Magee v. Trs. of the Hamline Univ.*, 957 F. Supp. 2d 1047, 1074 (D.

Minn. 2013) ("Minnesota law generally requires that in defamation suits, the precise words complained of be set forth 'verbatim.'") (quoting *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 326 (Minn. 2000)), *aff'd* 747 F.3d 532 (8th Cir. 2014). Such specificity provides defendants with notice of the scope of the defamation claim and aids in determining whether the statement was privileged. *Walker*, 867 F. Supp. 2d at 1056.

The allegations regarding the reports to Nobles County and the Minnesota Board of Nursing minimally satisfy Minnesota's pleading specificity requirements. The Second Amended Complaint alleges that Zoelle "told" Bergh his actions would be reported to Nobles County and the Minnesota Board of Nursing, and that Zoelle "either directly or indirectly" made those reports. (SAC ¶¶ 36, 40.) The Second Amended Complaint also alleges that "Zoelle caused Sanford to issue a false report to the Nobles County Attorney's Office that [Bergh] had engaged in improper conduct, and should be prosecuted for those actions." (*Id.* ¶ 40.) Furthermore, the Second Amended Complaint alleges that "Sanford filed a complaint against [Bergh] with the Minnesota Board of Nursing, based on the statements of Zoelle." (*Id.* ¶ 45.) While these allegations could be more precise, they are pleaded with sufficient specificity. Though Bergh cites the entire accusation that he acted inappropriately on August 15, 2022, as the false statement reported to Nobles County and the Board of Nursing, Sanford Health would not be required to sift through extensive documentation to find the allegedly defamatory statement. *Cf. Magee*, 957 F. Supp. 2d at 1074 (finding that allegations failed to identify what portions or language of statements

-8-

in a hearing committee determination constituted the defamatory statement).

Moreover, Zoelle is identified as the person who directly or indirectly reported the

incident,[1] *Schibursky v. Int'l Bus. Machs. Corp.*, 820 F. Supp. 1169, 1181 (D. Minn. 1993)

(requiring that the complaint "identify which defendants made false and defamatory

statements"), and Nobles County and the Minnesota Board of Nursing are sufficiently

identified as the entities to whom the alleged defamatory statements were made, *Finlay*

*v. MyLife.com Inc.*, 525 F. Supp. 3d 969, 983 (D. Minn. 2021) (finding no requirement that

defamation claims plead the specific names of third parties who viewed the allegedly

defamatory statements). Though the "where" is not expressly alleged, the Court finds

the allegations sufficient enough to put Sanford Health on notice as to the scope of the

defamation claim. *Walker*, 867 F. Supp. 2d at 1056–57 (finding allegations were pleaded

with sufficient sufficiency even though the "where" was not identified). The alleged

defamatory statements to Nobles County and the Minnesota Board of Nursing have thus

been pleaded with sufficient specificity.

However, the allegedly defamatory statements to prospective employers do not

satisfy the pleading specificity requirements. The Second Amended Complaint alleges

---

[1] In his opposition brief, Bergh claims that the "Third Amended Complaint states specifically that false statements were made by Natalie Paulson, May Paw, Kathleen Gums, and Defendant Zoelle to the Nobles County Attorney's Office on August 15, 2022." (Pls.' Opp'n Mot. Dismiss at 8, Sept. 26, 2024, Docket No. 31.) But the Third Amended Complaint was simply proposed, not accepted by the Court. These names—aside from Zoelle's—do not appear in the Second Amended Complaint, which remains the operative complaint in this action.

that Sanford Health has "routinely state[d]" to "a number of healthcare providers throughout the Upper Midwest" that "Bergh is no longer working for Sanford because of 'unprofessional conduct.'" (SAC ¶ 54.) While the actual defamatory statements are more concrete here, i.e., that Bergh's employment was terminated for "unprofessional conduct," the allegations are lacking in other material respects. In particular, the allegations do not identify which healthcare providers received the allegedly defamatory statements. While the Second Amended Complaint need not identify which specific individuals of prospective employers received the alleged defamatory statements, *see Finley*, 525 F. Supp. 3d at 983, the failure to identify any prospective employers is insufficient to provide Sanford Health with notice as to the scope of the defamation claim. The allegedly defamatory statements to prospective employers were thus not pleaded with sufficient specificity.

While the reports to Nobles County and the Minnesota Board of Nursing pass muster under Minnesota law's pleading specificity requirements, the statements to prospective employers do not.

### b. False Statements

In addition to pleading specificity issues, Bergh has not adequately alleged that the allegedly defamatory statements are false. A defamation claim must allege that the defendant made a false statement. *Bahr*, 766 N.W.2d at 919–20; *Nelson*, 75 F.4th at 941. A false statement is one that is not "substantially true." *Finlay*, 525 F. Supp. 3d at 983 (quoting *Range Dev. Co. v. Star Tribune*, 885 N.W.2d 500, 510 (Minn. Ct. App. 2016)).

The allegations regarding the reports to Nobles County and the Minnesota Board of Nursing do not identify any false statement.  Bergh claims that the accusation that he acted in a tawdry or improper manner on August 15, 2022, is false.  In his view, any person with knowledge or experience regarding prone positioning of a woman for surgery would understand that Bergh acted appropriately.  Yet even if performing a breast examination under these circumstances was standard practice, Sanford Health's reports to Nobles County and the Minnesota Board of Nursing were not demonstrably false.  To the extent that Sanford Health reported that the breast examination had taken place at all, such statements merely presented the facts; Bergh does not deny that the breast examination happened in the first place.  Furthermore, to the extent that Sanford Health reported that Bergh had acted inappropriately, such statements are inactionable as statements of opinion.  *Prater v. Trs. of Hamline Univ. of Minn.*, 693 F. Supp. 3d 1009, 1028 (D. Minn. 2023).  Repeating the operating personnel's perception that Bergh's breast examination was done in a tawdry manner and for an improper or lascivious purpose "cannot be reasonably interpreted as stating a fact" and "cannot be proven true or false."  *Id.* (quoting *McKee v. Laurion*, 825 N.W.2d 725, 733 (Minn. 2013)).  Thus, the alleged defamatory statements to Nobles County and the Minnesota Board of Nursing do not contain any false statements.

Similarly, the reference statements to prospective employers that Bergh's employment was terminated for "unprofessional conduct" are not actionable.  "[A] report

that simply stated that [a nurse] complained, that [Zoelle] investigated and determined the complaint was well founded, and that [Bergh] [was] disciplined based upon that determination, would contain no statement that is even arguably false, an essential element of defamation torts." *Freeman v. Bechtel Constr. Co.*, 87 F.3d 1029, 1031 (8th Cir. 1996). Moreover, any statements that Bergh's conduct was unprofessional are nonactionable opinion statements. *Prater*, 693 F. Supp. 3d at 1028.[2] The alleged defamatory statements to prospective employers do not contain any false statements.

Neither the reports to Nobles County and the Minnesota Board of Nursing nor the reference statements to prospective employers contain any false statements. Without any false statements, the Second Amended Complaint fails to state a claim for defamation.

### c.    Privilege

Even if the alleged defamatory statements did contain false statements, such statements are privileged under statutory or qualified immunities.

The report to Nobles County is protected by statutory immunity. Minnesota law immunizes good faith reports of suspected maltreatment of vulnerable adults from civil or criminal liability. Minn. Stat. § 626.557, subd. 5. As a mandatory reporter, Minn. Stat.

---

[2] *See also Freiburger v. Timmerman*, No. 13-8174, 2014 WL 5423068, at *5 (N.D. Ill. Oct. 23, 2014) (finding that letter containing opinions that litigant handled situation unprofessionally was nonactionable); *Kiehn v. Stein*, No. 12-6554, 2013 WL 1789718, at *3 (N.D. Cal. Apr. 26, 2013) (finding "extremely inappropriate" and "unprofessional" to be inactionable expressions of opinion).

§ 626.5572, subd. 16, Sanford Health must immediately make a report if it "has reason to believe that a vulnerable adult is being or has been maltreated."  Minn. Stat. § 626.557, subd. 3(a).  A vulnerable adult is one who "possesses a physical or mental infirmity or other physical, mental, or emotional dysfunction . . . that impairs the individual's ability to provide adequately for the individual's own care without assistance," and "the individual has an impaired ability to protect the individual's self from maltreatment."  *Id.* § 626.5572, subd. 21(a)(4).  A law enforcement agency should immediately be notified when there is "reason to believe that a crime has been committed."  *Id.* § 626.557, subd. 9(d).  To survive statutory immunity, Bergh has to adequately plead that Sanford Health lacked good faith.  *Thompson v. Olsten Kimberly Quality-Care, Inc.*, 980 F. Supp. 1035, 1038 (D. Minn. 1997).

Bergh contends that Sanford Health lacked good faith by failing to properly investigate the incident on August 15, 2022.  In particular, Bergh contends that Sanford Health's failure to conduct a more thorough investigation prevented it from understanding that the breast examination was standard procedure.  The Court agrees that Sanford Health could have and likely should have taken additional steps to conduct a more thorough investigation.  For example, the hospital could have invited operating personnel or other anesthetists and physicians familiar with prone positioning practices to make statements to the investigating Sanford Professional Committee.  Nonetheless, failure to more thoroughly investigate a matter within the short timeframe permitted

under mandatory reporting requirements does not equal lack of good faith. In fact, failure to investigate at all does not necessarily mean lack of good faith. *Cf. Connelly v. Nw. Publ'ns, Inc.*, 448 N.W.2d 901, 904 (Minn. Ct. App. 1989) (finding that a failure to investigate a news article standing alone could not establish actual malice); *Speer v. Ottaway Newspapers, Inc.*, 828 F.2d 475, 478 (8th Cir. 1987) (same). While failure to investigate could mean negligence, "[i]t does not establish knowledge of falsity or serious doubt about the truth of the story." *Connelly*, 448 N.W.2d at 904.

Bergh has not alleged a lack of good faith that would overcome the statutory immunity protecting the report to Nobles County. After Sanford Health investigated the incident, the hospital credited the operating room personnel's perception that Bergh's breast examination on the sedated female patient was done in a tawdry manner and for an improper or lascivious purpose. Even Bergh seems to acknowledge in the Second Amended Complaint that any erroneous reporting was the result of "misapprehension," which does not indicate lack of good faith. (SAC ¶ 28–29.) The fact that the criminal charges were eventually dismissed does not mean Sanford Health lacked good faith, either. *Cf. Zean v. Mary T. Inc.*, No. A18-1586, 2019 WL 1758015, at *5 (Minn. Ct. App. Apr. 22, 2019) (affirming the dismissal of defamation claims even though the plaintiff alleged the statements were fabricated and were deemed unsubstantiated). Given the seriousness of the assault accusation and the vulnerable status of the sedated female patient at the time, the allegations support a finding that Sanford Health's immediate

reporting of the suspected maltreatment of the sedated female patient to Nobles County was made in good faith.  The report to Nobles County is thus protected by statutory immunity.

The report to the Minnesota Board of Nursing is similarly protected by statutory immunity.  Minnesota law immunizes good faith reports to the Minnesota Board of Nursing for conduct by a licensed nurse that constitutes grounds for discipline.  Minn. Stat. §§ 148.263, subd. 1, 148.264, subd. 1.  Bergh repeats his earlier argument that Sanford Health lacked good faith because it failed to conduct a more thorough investigation of the incident.  Absent any facts reasonably suggesting that Sanford Health lacked good faith in making the report to the Board of Nursing other than an alleged failure to investigate the way that Bergh wished the hospital would have, the Court finds that the report to the Board of Nursing is protected by statutory immunity.

Finally, qualified privilege protects the reference statements made to prospective employers.  A qualified privilege applies when a court determines that "statements made in particular contexts or on certain occasions should be encouraged despite the risk that the statements might be defamatory."  *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 889 (Minn. 1986).  A statement is privileged if it was "made on a proper occasion and for a proper purpose and [was] based upon reasonable or probable grounds . . . even if it later proves to be false."  *Palmisano v. Allina Health Sys., Inc.*, 190 F.3d 881, 885 (8th Cir. 1999).  Whether a statement is privileged is a question of law.  *Id.*

-15-

(citing *Lewis*, 389 N.W.2d at 889–90).  A plaintiff may overcome a finding of privilege by proving actual malice.  *Id.*  To show actual malice, a plaintiff must present evidence extrinsic to the statement, such as proof of personal ill feeling, or evidence intrinsic to the statement, such as exaggerated language.  *Bahr*, 766 N.W.2d at 920.

Qualified privilege protects the alleged defamatory statements to prospective employers.  Employers have a proper purpose and motive for sharing information about former employees with prospective employers.  *Hunt v. Univ. of Minn.*, 465 N.W.2d 88, 92 (Minn. Ct. App. 1991).  Bergh argues that Sanford Health lacked probable cause or reasonable grounds for making the alleged defamatory statements because it failed to properly investigate the incident.  Yet here, Sanford Health did investigate, and there are no facts reasonably suggesting that the operating room personnel who reported the incident was potentially biased or that her statements were motivated by actual malice.  *Issaenko v. Univ. of Minn.*, 57 F. Supp. 3d 985, 1033–35 (D. Minn. 2014) (dismissing defamation claim where the complaint contained no allegations that could be construed as showing malice).  What's more, the fact that the criminal charges were dismissed or that the Minnesota Board of Nursing did not pursue disciplinary action does not mean that Sanford Health acted unreasonably or without probable cause in making the statements to prospective employers.  *Cf. Zean*, 2019 WL 1758015, at *5.  Thus, the reference statements to prospective employers are protected by qualified privilege.

Because the alleged defamatory statements either fail to meet pleading specificity requirements, do not contain any false statements, and/or are protected by statutory immunity and qualified privilege, the Court will dismiss the defamation claim.

### 2.    Tortious Interference with Prospective Advantage

Bergh also alleges that Sanford Health's statements to prospective employers that Bergh's contract was terminated because of "unprofessional conduct" constitutes tortious interference with prospective advantage.

A claim for tortious interference with prospective economic advantage under Minnesota law has five elements: (1) the "existence of a reasonable expectation of economic advantage[,]" (2) the "[d]efendant's knowledge of that expectation of economic advantage[,]" (3) that the "defendant intentionally interfered with the plaintiff's reasonable expectation of economic advantage, and the intentional interference is either independently tortious or in violation of a state or federal statute or regulation[,]" (4) "[t]hat in the absence of the wrongful act of the defendant, it is reasonably probable that the plaintiff would have realized his economic advantage or benefit[,]" and (5) the plaintiff suffered damages. *Gieseke ex rel. Diversified Water Division, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014); *C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*, 60 F.4th 1144, 1150–51 (8th Cir. 2023).  The claim for tortious interference with prospective economic advantage is lacking in several respects.

As an initial matter, the Second Amended Complaint fails to "specifically identify a third party with whom [Bergh] had a reasonable probability of a future economic

relationship." *Gieseke*, 844 N.W.2d at 221. "[T]he mere general loss of possible unspecified customers does not establish the tort of intentional interference with prospective economic relations under Minnesota law." *Int'l Travel Arrangers v. NWA, Inc.*, 991 F.2d 1389, 1405 (8ᵗʰ Cir. 1993); *see also Gieseke*, 844 N.W.2d at 221. The Second Amended Complaint's references to unidentified "other healthcare institutions" and "prospective clinics or hospitals" are insufficient to meet Bergh's burden. *H Enters. Int'l, Inc. v. Gen. Elec. Cap. Corp.*, 833 F. Supp. 1405, 1417 (D. Minn. 1993) (noting that "[t]he mere loss of unspecified business" is insufficient).

Even if the Second Amended Complaint had identified third parties, however, the tortious interference claim still fails because it does not sufficiently allege that any interference by Sanford Health was "intentional and independently tortious or unlawful, rather than merely unfair." *Gieseke*, 844 N.W.2d at 218. Conduct by a defendant is improper if done "wantonly, willfully, and intentionally for the purpose of wrongfully [interfering]." *Witte Transp. Co. v. Murphy Motor Freight Lines, Inc.*, 193 N.W.2d 148, 151 (Minn. 1971); *see also Inline Packaging, LLC v. Graphic Packaging Int'l LLC*, 351 F. Supp. 3d 1187, 1214–15 (D. Minn. 2018). Here, the Second Amended Complaint does not allege facts reasonably suggesting that any alleged interference by Sanford Health was intentionally and tortiously done to take "malicious retribution" against Bergh. (Pl.'s Mem. Opp'n Mot. Dismiss at 15, Sept. 26, 2014, Docket No. 31.) Bergh argues such in his response brief, but the Court will disregard allegations that were not included in the

Second Amended Complaint. *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Finally, the Second Amended Complaint does not allege actual damages caused by any alleged interference with Bergh's prospective employment.  Damages for tortious interference cannot be "remote, conjectural, or speculative." *Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1044 (D. Minn. 2013).  Though Bergh argues his damages are not remote or speculative and that he will be able to show substantial damages at trial, he has not specified what prospective economic relationships he has lost because of Sanford Health's conduct, so his damages are currently speculative. *Gieseke*, 844 N.W.2d at 222 (finding damages speculative where defendant failed to identify any customers from whom it allegedly lost future warranty work).

Because the Second Amended Complaint fails to identify specific third parties with whom Bergh had a reasonable probability of a future economic relationship, fails to adequately plead that Sanford Health's conduct was improper, and fails to allege actual damages, the Court will dismiss the tortious interference with prospective advantage claim.

### 3.    Malicious Prosecution

Bergh also alleges Sanford Health engaged in malicious prosecution by causing him to be prosecuted in the Nobles County Attorney's Office.

A claim for malicious prosecution under Minnesota law has four elements: (1) proceedings were initiated (2) without probable cause and (3) with malice, and (4) the proceedings terminated in the defendant's favor. *Cox v. Lauritsen*, 147 N.W. 1093, 1094 (Minn. 1914); *Nygard v. City of Orono*, 39 F.4th 514, 521 (8th Cir. 2022). A defendant can be liable for malicious prosecution if the plaintiff was charged with a crime based on the defendant's lies. *Young v. Klass*, 776 F. Supp. 2d 916, 923 (D. Minn. 2011). "[M]alicious prosecution claims against any party are strongly disfavored and have 'always been carefully circumscribed.'" *Bahr v. County of Martin*, 771 F. Supp. 970, 979–80 (D. Minn. 1991) (quoting *Lundberg v. Scoggins*, 335 N.W.2d 235, 236 (Minn. 1983)).

Though Sanford Health is a private entity, that does not necessarily preclude liability for malicious prosecution. For a private entity to be liable for malicious prosecution, the defendant must have either pressured the prosecutor to initiate the proceedings or else lied to the prosecutor, and the lies resulted in criminal charges. *Young*, 776 F. Supp. 2d at 923–24. There is no suggestion in the Second Amended Complaint that Sanford Health pressured Nobles County to initiate the proceedings. In fact, Bergh specifically alleges that Nobles County investigated the accusation on its own. (SAC ¶ 41.) *See Flowers v. City of Minneapolis*, No. 05-2484, 2007 WL 2893349, at *9 (D. Minn. Sept. 28, 2007) (dismissing malicious prosecution claim where the prosecutor exercised independent judgment). Though Bergh contends that Sanford Health lied to Nobles County in making the report, the Second Amended Complaint does not allege any

demonstrably false, non-opinion statements by Sanford Health to Nobles County.  So, because Sanford Health, a private entity, did not pressure Nobles County into filing a criminal complaint or lie to Nobles County, Bergh's malicious prosecution claim fails.

Bergh's malicious prosecution also fails because Sanford Health had probable cause to report the incident to Nobles County.  "Probable cause is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged."  *Allen v. Osco Drug, Inc.*, 265 N.W.2d 639, 643 (Minn. 1978) (quotation omitted).  "Only reasonable belief that probable cause existed is necessary to negate a malicious prosecution claim."  *Nygard*, 39 F.4th at 521 (quoting *Dunham v. Roer*, 708 N.W.2d 552, 569 (Minn. Ct. App. 2006)).  After operating room personnel witnessed Bergh conduct a breast examination on a sedated female patient in a manner that was perceived to be tawdry and for an improper or lascivious purpose, the hospital conducted its own investigation and immediately reported the suspected maltreatment of a vulnerable adult to Nobles County, as it was statutorily obligated to do.  Minn. Stat. § 626.557, subd. 3(a).  There are insufficient allegations that Sanford Health lacked probable cause based on what appears to be a reasonable belief that Bergh had mistreated a vulnerable adult.

Finally, Bergh also failed to allege sufficient facts demonstrating that Sanford Health acted with malice.  Malice "is a state of mind to be proved as a fact."  *Allen*, 265 N.W.2d at 645 (quoting *Hanowitz v. Great N. Ry. Co.*, 142 N.W. 196, 197 (Minn. 1913)).

The Second Amended Complaint alleges that Sanford Health's report to Nobles County was "malicious."  (SAC ¶ 41.)  But such a conclusory allegation is insufficient.  *Iqbal*, 556 U.S. at 678.  And there are no allegations that Sanford Health intentionally lied to Nobles County when reporting the incident, or that the hospital was attempting to target Bergh. *Cf. Young*, 776 F. Supp. 2d at 924 (finding a jury could find that defendant acted with malice where the facts indicated that he lied to the police).  A mistaken belief of probable cause does not equal malicious intent.  *Hoyland v. McMenomy*, 185 F. Supp. 3d 1111, 1129 (D. Minn. 2016).

Because the Second Amended Complaint fails to sufficiently allege that Sanford Health pressured Nobles County into filing a criminal complaint or lied, that Sanford Health initiated criminal proceedings without probable cause, and that Sanford Health acted with malice, the Court will dismiss the malicious prosecution claim.

## II.    MOTION TO STRIKE

### A.    Standard of Review

Under the Federal Rules of Civil Procedure, district courts "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f); *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007).  While courts enjoy liberal discretion under this rule, striking a party's pleading is an "extreme measure" that is "viewed with disfavor and [] infrequently granted."  *Stanbury L. Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) (internal quotation omitted).

### B.    Analysis

Bergh moves to strike Sanford Health's memorandum in support of its motion to dismiss.  He argues the memorandum contains "a number of unattested facts, far outside the pleadings in this matter, solely in an effort to further disparage the reputation of Craig Bergh."  (Pl.'s Mem. Supp. Mot. Strike at 1, Sept. 26, 2024, Docket No. 29.)

The Court will deny the motion.  Federal Rule of Civil Procedure 12(f) applies to pleadings and similar filings, not memoranda in support of motions to dismiss.  *Cf. VanDanacker v. Main Motor Sales Co.*, 109 F. Supp. 2d 1045, 1047 (D. Minn. 2000) (denying motion to strike plaintiffs' memorandum in opposition to a motion for attorney's fees); *Edwards v. Best Buy Corp. Off.*, No. 17-4016, 2018 WL 1413472, at *2 (D. Minn. Jan. 30, 2018), *report and recommendation adopted*, No. 17-4016, 2018 WL 1413461 (D. Minn. Mar. 21, 2018) (denying motion to strike a motion to dismiss).  Furthermore, the memorandum does not contain "scandalous, unsupported, and impertinent material," as Bergh claims.  Instead, it merely discusses the facts that the Second Amended Complaint itself provided.  In addition, Bergh failed to meet and confer with Sanford Health before filing the motion, in violation of the local rules.  D. Minn. LR 7.1(a).

### CONCLUSION

Because the Second Amended Complaint fails to state a claim for defamation, tortious interference with prospective advantage, or malicious prosecution, the Court will grant the motion to dismiss with prejudice.  Because a motion to strike is the improper

avenue through which to challenge Sanford Health's memorandum in support of its

motion to dismiss, the Court will deny the motion to strike.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.  Defendants' Motion to Dismiss [Docket No. 21] is **GRANTED**.

2.  The Second Amended Complaint [Docket No. 13] is **DISMISSED with prejudice**

    for failure to state a claim.

3.  Plaintiff's Motion to Strike [Docket No. 28] is **DENIED**.

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  June 23, 2025
at Minneapolis, Minnesota.                                    JOHN R. TUNHEIM
                                                    United States District Judge